# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| STEPHEN D. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-00140 |
| | ) | Senior Judge Haynes |
| v. | ) | |
| | ) | |
| MARSHALL COUNTY SHERIFF'S | ) | |
| OFFICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Plaintiff, Stephen D. Smith, filed this pro se action under 42 U.S.C. § 1983 against the

Defendants: Marshall County, Tennessee, the Marshall County Sheriff's Office, and Norman Dalton,

Cindy Durand, Justin Christmas, Katherine Mueller, Melissa Becktemen, Sabrina Patterson, Terry

Wright, Straley Holten, Billy Lamb, Taylor Schoenberger, Randall Norman, Wayne Coomes and

Richard Phillips[1], who are employees of Marshall County, and Southern Health Partners ("SHP")

and Felicia McGee, who is an employee of SHP. The individual County Defendants were named

in their official and individual capacities.

Plaintiff later moved to dismiss certain defendants and that motion was granted. (Docket

Entry Nos. 83 and 101). By Order, the Court directed Plaintiff to file an amended complaint with

a short and plain statement of all his claims. (Docket Entry No. 97). Plaintiff filed an amended

complaint seeking to incorporate his allegations in his original complaint. The Magistrate Judge

granted the Defendants' motion to strike the incorporated portion of the amended complaint and

---

[1]Richard Phillips has never been served in this action.

ordered that "[t]his case will proceed upon the claims asserted in Plaintiff's amended complaint."

Id. This action now proceeds on the claims against the above named Defendants.

Plaintiff's amended complaint asserts claims for violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments. (Docket Entry No. 116, ¶ 2). Plaintiff's specific claims are:

(1).   that Plaintiff was held in confinement for 350 days without being found guilty of any disciplinary infraction;

(2).   that Plaintiff was abused by other inmates due to acts or omissions of Defendants Katherine Mueller, Sabrina Patterson and Terry Wright;

(3).   that Plaintiff was subjected to cruel and unusual punishment by Defendant Straley Holten;

(4).   that Plaintiff was taken to state maximum security due to the false statements of Defendant Billy Lamb;

(5).   that Plaintiff was not given a fair hearing by the Marshall County jail disciplinary board on Defendant Taylor Schoenberger's disciplinary report against Plaintiff;

(6).   that Plaintiff was forced to accept medical treatment by Defendant Randall Norman and threatened with sanctions if he refused such treatment;

(7).   that Plaintiff filed numerous grievances against Defendant Richard Phillips that Defendant Patterson ignored;

(8).   that Defendant Patterson established a policy to harass, punish and deny Plaintiff access to the courts and challenging conditions of his incarceration; and

(9).   that Defendants McGee and SHP "caused inmates to sign releases which excuse herself and her employer, SHP, from liability if an inmate refuses medical care, medication or services."

See Docket Entry No. 116.

Before the Court are the Defendants' motions for summary judgment (Docket Entry Nos. 138 and 145). The Defendants: Marshall County, Tennessee; Billy Lamb; Cindy Durand; Justin

Christmas; Katherine Mueller; Melissa Becktemen; Norman Dalton; Randall Norman; Sabrina Patterson; Straley Holten; Taylor Schoenberger; Terry Wright; and Wayne Coomes contend that the undisputed facts do not establish any violation of Plaintiff's constitutional rights and that Plaintiff failed to exhaust his administrative remedies. Defendants McGee and SHP contend that the undisputed facts do not establish any violation of Plaintiff's constitutional rights and that Plaintiff failed to exhaust his administrative remedies. Plaintiff filed his responses (Docket Entry Nos. 152 and 153) and his combined response (Docket Entry No. 154) to Defendants' Statements of Undisputed Facts (Docket Entry Nos. 144 and 145-1), but does not provide an affidavit or declaration in support or any other evidence to dispute those facts.

For the reasons set forth below, the Court concludes that the Defendants' motions for summary judgment should be granted for Plaintiff's lack of proof to support a judgment on any of his claims.

## A. Findings of Fact[2]

On May 24, 2013, Plaintiff was arrested for rape and sexual exploitation of a minor and was held at the Marshall County Jail. (Docket Entry No. 144, Marshall County Defendants' Statement of Undisputed Facts at ¶ 1). Plaintiff remained at the Marshall County Jail as a pre-trial detainee from May 24, 2013 to December 8, 2013. Id. at ¶ 3.

In July 2013, Plaintiff was transferred to the E-pod at the Marshall County jail where inmate Norris Adam Endsley was also held. Endsley was placed on E-pod for his personal safety due to threats from other inmates and was in his cell except for one (1) hour a day. Id. at ¶ 3. On March 5,

---

[2] Absent contrary proof from Plaintiff, the Court adopts the Defendants' undisputed statement of facts.

2014, Plaintiff filed a grievance asserting that Endsley was making "comments of a sexual nature" and directing "sexual slurs" at him. Id. at ¶ 4. Plaintiff asserted that Endsley should not be "free to roam." Id. Sabrina Patterson investigated Plaintiff's March 5th grievance and determined that there was not any basis for Plaintiff's complaints against Endsley, citing Endsley was confined to his cell for 23 hours a day and thus, was not "free to roam." Id. at ¶ 5.

On August 6, 2013, Plaintiff signed a refusal of medical treatment and release of responsibility form to be removed from a diabetic diet, and he was thereby removed from such a diet. (Docket Entry No. 145-1, SHP Defendants' Statement of Undisputed Facts, at ¶¶ 22-23). On October 4, 2013, Plaintiff informed Nurse McGee that he would not pay for a medical provider and not to schedule any appointments for him, including dentists. Id. at ¶ 26. Plaintiff also informed Nurse McGee that he decided to discontinue having his blood sugar checked. Id. Nurse McGee granted his requests, and Plaintiff signed the appropriate refusal and release forms. Id. On May 6, 2014, Plaintiff signed a form refusing to take all of his medications that day, after being informed by Nurse McGee that he would need to do so. Id. at ¶¶ 55, 59. On June 13, 2014, Plaintiff signed a refusal form, refusing to go to sick call to have his blood pressure taken. Id. at ¶ 83. On June 18, 2014, Plaintiff signed a refusal form, refusing to go to sick call to have his blood pressure checked. Id. at ¶ 87. On July 10, 2014, Plaintiff signed a refusal form, refusing to allow Nurse McGee to take his blood pressure or weight. Id. at ¶ 92. On July 14, 2014, Plaintiff refused to take his antibiotic medication, and refused to sign a refusal form. Id. at ¶ 93. On July 15, 2014, Plaintiff refused to have his blood pressure checked and to take his antibiotic medication. Id. at ¶¶ 18, 94. Plaintiff complete a refusal of medical treatment form for McGee. Id. On July 17, 2014, Plaintiff refused his antibiotic medications and signed a refusal form. Id. at ¶ 97. From the rest of July through

4

December 2014, Plaintiff continued to refuse medical treatment and medications and sign refusal forms. Id. at ¶¶ 99, 111-12, 118, 130, 134, 137-38, 140-41, 144, 148-49, 154, 160, 165, 169.

On July 22, 2014, Plaintiff submitted a grievance, stating that he had terminated his dental appointments and that McGee sent two refusal forms for him to sign – one about his antibiotic medication and one about the dentist. Plaintiff alleged that he signed both under threat of being locked down unless he signed them. Id. at ¶ 100. On July 23 and 26, 2014, Plaintiff submitted grievances, demanding to be shown any rules that required him to sign a refusal form for SHP or be punished. Id. at ¶¶ 102-03. On August 4, 2014, Plaintiff submitted a grievance form, stating that he had not been provided a copy of rules he had signed requiring him to sign a waiver of liability or refusal of services. Id. at ¶ 113. On September 8, 2014, Plaintiff filed a grievance, stating that he would not accept any medication from Defendant Phillips and that he would not sign any refusal forms presented to him by Phillips. Id. at ¶ 133. On October 4, 2014, Plaintiff submitted a grievance stating that there was not any rule requiring him to sign a refusal form for anything, specifically not for medical services or medications. Id. at ¶ 150.

On September 30, 2014, Defendant Schoenberger filed an incident report against Plaintiff for refusing to obey his orders to return to his cell, in violation of Jail Inmate Rules 5, 9, and 25, a major infraction. (Docket Entry No. 144 at ¶ 6). Plaintiff was provided a "Notice of Disciplinary Action" and a hearing was set for October 3, 2014. Id. Plaintiff was informed that he had the right to call witnesses on his behalf. Id. At the October 3, 2014 hearing, Disciplinary Board members Cindy Durand, Wayne Coomes and Nathan Johnson heard testimony from Defendant Schoenberger; Plaintiff; officer Michael Daniels; Jail Administrator Sabrina Patterson; and Assistant Jail Administrator Terry Wright. Id. at ¶ 7. Defendants Schoenberger and Daniels testified that Plaintiff

would not return to his cell as ordered by Defendants Schoenberger and Daniels. Id. at ¶ 8. Plaintiff testified and present two witnesses at the hearing. Id. Based on the evidence, the Board unanimously found that Plaintiff had violated Rules 5, 9, and 25. Id. at ¶ 14. Plaintiff was placed on lockdown for seven (7) days with loss of telephone, visitation and commissary privileges under jail rules. Id. By the hearing date, Plaintiff had served three (3) days of the seven day sanction in lockdown that was credited to the seven (7) days Id. Plaintiff did not appeal the findings of the Board. Id. at ¶ 15.

Marshall County Jail Policy Number MCJ-507 provides the procedure for disciplining inmates that are charged with major infractions. (Docket Entry No. 142, Patterson Declaration, at ¶¶ 4, 19, Exhibit A). Under this policy, an inmate must be afforded a hearing by a three-person disciplinary committee within seven (7) days of the infraction. Id. The inmate must be given time to prepare a defense and shall be allowed to call witnesses in his defense. Id. After the committee has reached its decision, the inmate has the right to appeal the ruling to the Jail Administrator within 48 hours of the committee's written findings of fact. Id.

Under Policy Number MCJ-056, an inmate wishing to file a grievance will be provided with an Inmate Grievance Form upon request. Id. at ¶¶ 4 and 5. A completed grievance forms must be delivered promptly to the Shift Supervisor who will either resolve the grievance or forward the grievance to the Jail Administrator. Id. ¶ 4, Exhibit A. The Jail Administrator's decision may be appealed to the Sheriff of Marshall County within seventy-two (72) hours of the receipt of the grievance decision. Inmates are advised of their right to file grievances at the time of admission to the jail. Id. During his incarceration in the Marshall County Jail, Plaintiff never filed an appeal of any grievance disposition with the Sheriff of Marshall County. Id. ¶ 6.

In October 2014, due to continuing issues with Plaintiff at the Marshall County jail, Robert Carter the Assistant District Attorney applied to the Circuit Court for an order to transfer Plaintiff to a State facility. (Docket Entry No. 62 at 3). In support of such application, Carter submitted the affidavit by Defendant Lamb, the Marshall County Sheriff. Id. In the affidavit, Defendant Lamb stated "[t]he prisoner has threatened officers [sic] lives and refuses to take medication and food from some officers. The prisoner refuses to be transported by some officers." (Docket Entry No. 64-3, ¶ 4). On October 10, 2014, Judge Lee Russell entered an Order to transport Plaintiff to a state facility for safekeeping. Judge Russell's Order found:

> "That, the Marshall County Jail is insufficient to house and keep safe the prisoner, Stephen D. Smith. That, the prisoner's conduct and condition has created an extreme burden on the Marshall County Jail and they are unable to keep said prisoner due to the severity of the charges and personnel issues. That, after due inquiry by the Marshall County Sheriff's Department, no other jail or, or [sic] detention facility, reasonably close, is sufficient and/or able to house and keep safe this prisoner."

(Docket Entry No. 142, Patterson Declaration at ¶ 7, Exhibit C). Plaintiff was transported to the Riverbend Maximum Security Unit on December 8, 2014.

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." <u>Webster's Third New InterNational Dictionary</u> (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

<u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In <u>Street</u>, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.     Complex cases are not necessarily inappropriate for summary judgment.

2.      Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.      The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.      This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.      A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.      As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.      The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.      The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.      The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly"

12

established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The Prison Litigation Reform Act, requires dismissal of any prisoner action under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e), 1915A; 42 U.S.C. § 1997e. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Street v. Corrs. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996). Yet, do to so, Congress requires the prisoner to exhaust his administrative remedies before filing his action in the district court. Booth v. Churner, 632 U.S. 731, 733 (2001). The exhaustion requirement of Section 1997e(a) is mandatory, Jones v. Bock, 549 U.S. 199 (2007), and "prisoners must exhaust (available) grievance procedures before filing suit in federal court even though the … remedy sought is not an available remedy in the administrative process." Wyatt v. Leonard, 193 F.3d 876, 877-78 (6th Cir. 1999).

Once the affirmative defense of failure to exhaust is raised, the a prisoner plaintiff must present evidence of his compliance with the requirements of exhaustion. To do so, Plaintiff must show that he presented his grievance(s) "through one complete round" of the established grievance process. Thomas v. Woolum, 337 F.3d 720, 733 (6th Cir. 2003), abrogated on other grounds, Woodford v. Ngo, 548 U.S. 81 (2006). Plaintiff's transfer to another facility does not excuse the

13

exhaustion requirement. There is no futility exception to the exhaustion requirement. <u>Booth</u>, 532 U.S. at 741 n.6. A prisoner cannot exhaust his administrative remedies during the pendency of his action. <u>Harvin-Bey v. Rutter</u>, 420 F.3d 571, 580 (6th Cir. 2005). Here, Plaintiff has not presented proof of his exhaustion of the remedies afforded by the Marshall County jail. Thus, the Court lacks jurisdiction to hear his claims and the Defendants' motion for summary judgment should be granted.

As appropriate Order is filed herewith.

**ENTERED** this the _____ day of September, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge